**SO ORDERED.**

**SIGNED** this 14 day of June, 2007.

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| PARTITIONS PLUS OF WILMINGTON, INC., D/B/A PARTITIONS, INC., D/B/A STORM PROTECTION SYSTEMS, | Case No. 04-06776-8-JRL<br>Chapter 7 |
| Debtor. | |
| JAMES B. ANGELL, CHAPTER 7 TRUSTEE FOR PARTITIONS PLUS OF WILMINGTON, INC., D/B/A PARTITIONS, INC., D/B/A STORM PROTECTION SYSTEMS, | Adversary Proceeding No. 06-00152-8-AP |
| Plaintiff, | |
| v. | |
| UNITED RENTALS, INC., | |
| Defendant. | |

_____

### ORDER

This case is before the court on a motion for summary judgment filed by United Rentals and a motion for summary judgment filed by the trustee. On June 4, 2007, the court conducted a hearing on these matters in Raleigh, North Carolina.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## FACTS AND BACKGROUND

Partitions Plus of Wilmington, Inc. filed a chapter 11 bankruptcy petition on September 1, 2004. Thereafter, on November 9, 2004, the case was converted to one under chapter 7 and James B. Angell was appointed the trustee. Prior to the debtor filing bankruptcy, United Rentals supplied rental equipment to the debtor for use on certain construction projects.

On July 14, 2006, the plaintiff filed this adversary proceeding. The complaint alleged that the debtor made payments to the defendant within the ninety days prior the debtor's bankruptcy filing. The plaintiff contends that those payments were preferential transfers and are avoidable pursuant to 11 U.S.C. § 547(b) and recoverable under 11 U.S.C. § 550(a) in the amount of $75,849.40.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

**A.     11 U.S.C. § 547(b)**

Pursuant to 11 U.S.C. § 547(b) the trustee may recover certain preferential transfers made by the debtor in favor of specific creditors. In order for the trustee to avoid the transfers made by the debtor to the defendant, he must show that the transfers (1) were to or for the benefit of the defendant; (2) were for or on account of antecedent debts; (3) were made while the debtor was insolvent; (4) were made on or within ninety days before the debtor filed bankruptcy; and (5) enabled the defendant to receive more than he would have received if the transfers had not been made. 11 U.S.C. § 547(b). The Code places the burden on the trustee to prove the avoidability of the transfers. 11 U.S.C. § 547(g).[1] The burden of proving the nonavoidability of the transfers is placed on the creditor against whom avoidance is sought. Id.

It is not contested that the trustee has established the first four elements of a preferential transfer under § 547(b). The defendant received at least $75,849.40 from the debtor within ninety days of the petition date. At the time of each transfer, the debtor was insolvent, the

---

[1] As to the third element, there is a presumption that the debtor was insolvent during the ninety days prior to the petition date. 11 U.S.C. § 547(f).

defendant was a creditor of the debtor, and the transfers were made to or for the benefit of the defendant. The only contested element relates to whether the defendant received more than he would have received if the case was under chapter 7, the transfers had not taken place, and the creditor received payment of such debt to the extent provided by the Code.  11 U.S.C. § 547(b)(5).    ***1.    Express Trust***

The defendant contends that the trustee cannot meet his burden under § 547(b(5) of the Bankruptcy Code, because the monies paid to the defendant from the debtor were not property of the debtor. In support of this position, the defendant asserts that under the General Agreement of Indemnity ("Indemnity Agreement") entered into between the debtor and US Fire any monies due the debtor on any bonded contracts were to be held in trust for the benefit of the defendant.[2]

The Indemnity Agreement provided that, "[t]his Instrument shall be governed by, construed and enforced in accordance with the laws of the State of New York without regard to its principles of conflicts of laws." North Carolina recognizes that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." Tanglewood Land Co., Inc. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980). Therefore, the court will analyze the terms of the Indemnity Agreement under New York law.

---

[2]

> Where any Bond is executed in connection with a contract, the Indemnitors covenant and agree to hold all money or proceeds of such contract, whether received as payment or as loans, as a trust for the benefit of laborers, materialman, suppliers, subcontractors and the Surety to use such money or other proceeds for the purpose of performing the contract and discharging the obligation of the Bond beneficiaries, and for no other purpose. . . [.]

*US Fire Aff.*, General Agreement of Indemnity.

4

"Under New York law, an express trust must have: (1) a designated beneficiary; (2) a designated trustee who is not a beneficiary; (3) an identifiable trust res; and (4) actual delivery or assignment of the trust res with the intent of vesting legal title with the trustee." <u>Harleysville Worcester Mutual Ins. Co. v. Fleet Nat'l Bank (In re Suprema Specialties, Inc.)</u>, 2007 U.S. Dist. LEXIS 33937, at *35 (S.D.N.Y. May 7, 2007) (citing <u>Agudas Chasidei Chabad v. Gouray</u>, 833 F.2d 431 (2nd Cir. 1987)). In this case, the defendant argues that all four elements are met, and thus a trust is formed. The beneficiaries are designated as the laborers, materialmen, suppliers, subcontractors, and the surety. The debtor is designated as the trustee of the trust. The trust property is defined as "all money or proceeds" on all contracts executed in connection with any bond. Deliver of the trust property occurs when the debtor receives any money or proceeds in connection with any bonded contract. Therefore, according to the defendant the Indemnity Agreement creates an express trust which should be recognized under New York law.

The defendant's analysis inaccurately reflects the law. According to New York law, trust fund assets must be segregated, and "to commingle alleged trust funds with non-trust assets . . . by itself is fatal" to the claim of an express trust. <u>In re Suprema Specialties, Inc</u>, 2007 U.S. Dist. LEXIS 33937, at *36. By permitting commingling of funds, an indemnity agreement can prevent the identification of the trust res. <u>Id.</u> In the present case, the Indemnity Agreement did not require separate accounts for the funds received by the debtor on bonded projects. Instead the trustee's affidavit stated that the debtor maintained two bank accounts during the year prior to its filing bankruptcy. One account was used as its general operating account in which the debtor deposited all funds it received. The second account was used for payment of the debtor's payroll. The debtor's general practice was to transfer funds into the payroll account from the general

operating account as needed. Furthermore, the defendant admitted that all payments it received from the debtor came from the same checking accounting, regardless of whether the payment was for a bonded or non bonded job.

Based on the facts, the court finds that there is clear evidence that the debtor intermingled the monies it received from bonded projects with those it received from non bonded projects. This commingling of alleged trust funds with non-trust funds prevented the identification of the trust res. Since all of the elements of a trust are not present, the funds from the debtor to the defendant were not trust funds but instead were property of the debtor.[3]

    2.    *Equitable Lien*

Independent of the Indemnity Agreement, the defendant asserts that it had an equitable lien in the transferred funds received from the debtor on account of equipment supplied by United Rentals on any construction project. In reaching this result, the defendant relies on Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S. Ct. 232 (1962). In *Pearlman*, the Supreme Court determined the subrogation rights of a surety that paid subcontractors on a construction project after the general contractor filed bankruptcy. Id. In that case, the government paid funds to the general contractor after it filed bankruptcy that had previously been retained by the government. Id. at 134. The trustee took possession of the funds, and the surety sued claiming that it owned the funds. Id. The Court held that the retained funds had never become part of the bankruptcy estate, and that "the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it."

---

[3]This flaw in itself is adequate to prevent a trust from being formed under New York law, and therefore the court will not address the merits of the other elements.

Id. at 135-41.

The defendant's argument that the *Pearlman* analysis also applies to subcontractors was recently rejected by the Fourth Circuit. See Grochal v. Ocean Technical Servs. Corp. (In re Baltimore Marine Indus.), 476 F.3d 238, 241-42 (4th Cir. 2007) (holding that surety who has fully paid all subcontractors has a greater right to retained funds than that of an unpaid subcontractor). Therefore, the court rejects the defendant's arguments that based on *Pearlman* the transferred funds never become property of the debtor's estate, and that the defendant holds an equitable lien in the funds which entitles it to priority in payment over all subsequent lienholders and general creditors.

### 3.     *Payment From Third Party*

Based on the analysis above, the monies paid by the debtor to the defendant were property of the debtor. The defendant additionally argues that had the debtor not paid the defendant, the defendant would have made a claim on the bonds issued in connection with the construction projects. The defendant would have received payment from the general contractor, who would have then withheld monies owed to the debtor. Based on these facts, the defendant did not receive more than it would have received if the transfers had not taken place. The flaw of this argument is that the focus of the fifth element is not on whether the defendant would have received payment from someone else for its claims.[4] Instead, the court must determine whether in a chapter 7 liquidation there would have been enough funds to pay this creditor's claim out of

---

[4] Although this argument does not prevent the trustee from establishing the elements of a preferential transfer, it may be used as a new value defense in limited circumstances. See Partitions Plus of Wilmington, Inc. v. Pennington (In re Partitions Plus of Wilmington, Inc.), Case No. 06-00148-8-AP (Bankr. E.D.N.C. June 11, 2007).

the estate if it had not been preferentially paid. Smith v. Creative Financial Management, Inc. (In re Virginia-Carolina Financial Corp.), 954 F.2d 193, 199 (4th Cir. 1992). The trustee submitted an affidavit that is sufficient to establish that there are inadequate funds to provide a payout in full to unsecured creditors, and this fact is not contested by the defendant. If the defendant had not been preferentially paid, it would not have received the full amount of its claim out of the debtor's estate. Therefore, the trustee has met his burden as to the fifth element, and all the elements of § 547(b) are established.

**B.    *New Value Defense***

The defendant's only defense on which it seeks summary judgment is that of new value. Section 547(c)(4) provides that a preferential transfer may not be avoided, "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor– (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value of the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.] 11 U.S.C. § 547(c)(4). For the purpose of § 547 "new value" is defined as,

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2).

The defendant asserts that certain payments made by the debtor to the defendant were made in exchange for new value in the form of credit extended to the debtor subsequent to receipt of the transferred funds. The trustee does not dispute that the defendant is entitled to some credit against the amount of the preferential payments for subsequent advances of new

value pursuant to § 547(c)(4). At the hearing, the trustee conceded that the defendant is entitled to at least a $8885.66 credit for new value.

The court finds, at this time, that the defendant is entitled to a minimum credit of $8885.66 based on new value, and it has the right to try to increase that amount upon an appropriate showing at trial. Additionally, the defendant still has available its other defenses.

## CONCLUSION

Based on the forgoing, the plaintiff's motion for summary judgment is ALLOWED. The plaintiff has met his burden of establishing that the defendant received a preferential transfer under § 547(b). The defendant's motion for summary judgment is granted to the extent a new value credit in the minimum amount of $8885.66 is allowed, and otherwise is DENIED.

"END OF DOCUMENT"