**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED RENTALS, INCORPORATED,
*Plaintiff-Appellant,*
v.
JAMES BIGELOW ANGELL,
*Trustee-Appellee.*

No. 09-1209

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(7:08-cv-00097-BO)

Argued: December 2, 2009

Decided: January 22, 2010

Before TRAXLER, Chief Judge, and SHEDD and DAVIS, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Shedd and Judge Davis joined.

---

**COUNSEL**

**ARGUED**: James Durling Fullerton, FULLERTON & KNOWLES, PC, Clifton, Virginia, for Appellant. James Bigelow Angell, HOWARD, STALLINGS, FROM & HUTSON, PA, Raleigh, North Carolina, for Appellee. **ON**

Case 06-00152-8-JRL Doc 108 Filed 04/07/10 Entered 04/07/10 13:40:24 Page 2 of 14
Case: 09-1209 Document: 36 Date Filed: 01/22/2010 Page: 2



**BRIEF:** Philip W. Paine, HOWARD, STALLINGS, FROM & HUTSON, PA, Raleigh, North Carolina, for Appellee.

---

**OPINION**

TRAXLER, Chief Judge:

United Rentals, Inc. ("United") appeals a district court order affirming a bankruptcy court judgment allowing the bankruptcy trustee to avoid and recover certain payments made to United during the 90 days prior to the bankruptcy petition. We affirm.

I.

Partitions Plus of Wilmington, Inc. ("the Debtor") filed a Chapter 11 bankruptcy petition on September 1, 2004. The case was subsequently converted to a Chapter 7 proceeding. Prior to its bankruptcy filing, the Debtor had subcontracted in several construction projects, and United had subcontracted with the Debtor to supply rental equipment. The Debtor executed payment and performance bonds with United States Fire Insurance Company ("the Surety"), for the construction of several of these projects.

In the 90-day period prior to the Debtor's bankruptcy filing, the Debtor made three payments to United totaling $75,849.40 for amounts owed for United's prior provision of rental equipment and parts ("the transfers"), $67,470.60 of which was for bonded projects. The bankruptcy trustee ("the Trustee") filed this action seeking to avoid and recover the transfers as preferential payments. *See* 11 U.S.C.A. § 547(b) (West 2004 & Supp. 2009). United denied that the transfers were avoidable and asserted defenses under 11 U.S.C.A. § 547(c)(1), (3), and (4) (West 2004 & Supp. 2009).

The Bankruptcy Code's preference section serves two goals. First, it prevents companies from "racing to the courthouse to dismember the debtor during his slide into bankruptcy." *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 487 (4th Cir. 1992) (internal quotation marks omitted). And second, it protects "equality of distribution among creditors of the debtor." *Id.* (internal quotation marks omitted). Except as specified in the Bankruptcy Code, a bankruptcy trustee may avoid as a preference a transfer made by an insolvent debtor to a creditor on account of an antecedent debt within 90 days before the date of the filing of the bankruptcy petition if a certain condition is satisfied.[1] *See* 11 U.S.C.A. § 547(b). That condition is that the transfer to be avoided must have enabled the creditor to receive more than it would have received from the debtor's Chapter 7 bankruptcy on the debt the transfer extinguished if the payment sought to be avoided had never been made. *See* 11 U.S.C.A. § 547(b)(5).

Section 547(c) provides exceptions for certain preferential transfers, the avoidance of which would not further the purposes of § 547(b). Section 547(c)(1) provides that a transfer cannot be avoided "to the extent [it] was . . . intended by the debtor and the creditor to or for whose benefit [it] was made to be a contemporaneous exchange for new value given to the debtor; and [it] in fact [was] a substantially contemporaneous exchange." 11 U.S.C.A. § 547(c)(1). The purpose of the § 547(c)(1) exception is "to encourage creditors to continue to deal with troubled debtors without fear that they will have to disgorge payments received for value given." *Collier on Bankruptcy* ¶ 547.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009). As its legislative history demonstrates, § 547(c)(1) was designed to address the "generic problem [that] those on the verge of bankruptcy still need to buy things . . . and the fact that checks are used (with a brief gap between

[1]Unsecured creditors may then share in any avoided payments on a pro rata basis.

purchase and payment) ought not render the payment avoidable as one made for an antecedent debt." *Collins v. Greater Atl. Mortgage Corp. (In re Lazarus)*, 478 F.3d 12, 18 (1st Cir. 2007) (citing H.R. Rep. No. 95-595, at 373 (1977)); *see Batlan v. TransAmerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.)*, 265 F.3d 959, 965 n.4 (9th Cir. 2001) (explaining that § 547(c)(1) "was designed to prevent trustees from avoiding payments that were clearly intended to support a new transaction, instead of an antecedent debt, even though the actual payment was not recorded until after the transaction"). Protecting contemporaneous exchanges for new value from avoidance does not harm the preference section's goal of protecting the equality of distribution among the debtors because such exchanges do not diminish the size of the debtor's estate. *See Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines*), 130 F.3d 323, 326 (8th Cir. 1997).

The Trustee moved for partial summary judgment on the issue of whether the transfers satisfied the § 547(b) requirements, and United moved for summary judgment. The Trustee argued that it had established all of the § 547(b) elements as a matter of law. As is relevant here, United responded that the Trustee could not establish that the transfers were preferences under § 547(b) because the transferred funds were not property of the estate. United also argued that the Trustee could not satisfy § 547(b)(5) with regard to the transfers because United would have received full payment from the Surety by enforcing its bond rights had the Debtor not made the transfers.

United further contended that the § 547(c)(1) defense applied because the transfers had the effect of discharging United's right to file and enforce a mechanic's lien. United finally maintained that certain payments from the Debtor to United were in exchange for new value in the form of credit extended to the Debtor after the transferred funds were received.

Considering the parties' cross-motions, the bankruptcy court ruled as a matter of law that the Trustee met its burden of establishing that the transfers were preferences under § 547(b). Regarding United's argument that had the challenged transfers not been made, United still would have received full payment from the bond, the court reasoned that the critical question with regard to § 547(b)(5) was not whether the creditor would have received payment from *another source* had the challenged transfer not been made, but rather, whether it would have received payment from the Chapter 7 bankruptcy estate. As for United's new-value defense, the bankruptcy court noted that the Trustee did not dispute United's assertion that some payments made to the Debtor were in exchange for credit that United extended to the Debtor after the transferred funds were received. The bankruptcy court thus ruled that United was "entitled to a minimum credit of $8885.66 based on new value, and it has the right to try to increase that amount upon an appropriate showing at trial." J.A. 179.

The case then proceeded to trial regarding United's § 547(c)(1) defense. United sought to prove that the transfers were substantially contemporaneous exchanges for new value because they extinguished United's rights to file and enforce a lien as well as its rights to obtain payment through the bond. The bankruptcy court found that the § 547(c)(1) defense was not established because the discharge of United's inchoate lien rights and bond rights did not constitute new value. The court noted that United had not perfected any lien or security interest in property to secure the Debtor's debt and thus had no interest to release in exchange for the transfers. The court ruled that to establish the § 547(c)(1) defense with regard to its inchoate lien and bond rights, United would have to prove that it would have timely enforced these rights and been paid in full had the challenged transfers not been made, and that at that time the Debtor was still owed funds by the general contractor on which the Surety could have asserted a lien. Concluding that United failed to establish the former point, the

Case: 09-1209 Document: 36 Date Filed: 01/22/2010 Page: 6



court ruled that the Trustee was entitled to recover the remainder of the challenged transfers—$66,963.74—for the benefit of the bankruptcy estate. United then appealed to the district court, which affirmed the bankruptcy court judgment.

II.

United argues that the bankruptcy court erred in granting partial summary judgment against it regarding whether the transfers were preferences under § 547(b). We find no reversible error.

We review a grant of partial summary judgment by the bankruptcy court and the affirmance thereof by the district court de novo. *See Bank of N.Y. v. Treco (In re Treco)*, 240 F.3d 148, 155 (2d Cir. 2001). Summary judgment in bankruptcy is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates the standards of Federal Rule of Civil Procedure 56 into bankruptcy proceedings. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. Thus, in reviewing a grant of partial summary judgment, we view the facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Partial summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 300 (4th Cir. 1998).

Section 547(b) states:

> Except as provided in [11 U.S.C.A. § 547(c) and (i)], the trustee may avoid any interest of the debtor in property-
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) *that enables such creditor to receive more than such creditor would receive if-*

*(A) the case were a case under chapter 7 of this title;*

*(B) the transfer had not been made; and*

*(C) such creditor received payment of such debt to the extent provided by the provisions of this title.*

11 U.S.C.A. § 547(b) (emphasis added); *see Morrison v. Champion Credit Corp. (In re Barefoot)*, 952 F.2d 795, 798 (4th Cir. 1991). The bankruptcy trustee bears the burden of proving that a transfer is avoidable under § 547(b). *See* 11 U.S.C.A. § 547(g) (West 2004).

United contends that the bankruptcy court erred in concluding at the summary judgment stage that the Trustee had established the fifth § 547(b) requirement as a matter of law. This is so, United argues, because had the transfers not been made, United could have received full payment from the Surety by enforcing its bond rights.[2] The bankruptcy court properly

[2]United similarly argues that the court's resolution of the § 547(b) issue at the summary judgment stage was improper because the Trustee failed to show as a matter of law that, had the transfers not been made, United

rejected this argument, however. The § 547(b)(5) inquiry focuses "not on whether a creditor may have recovered all of the monies owed by the debtor *from any source whatsoever*, but instead upon whether the creditor would have received less than a 100% payout" from the bankruptcy estate. *Smith v. Creative-Financial Mgmt., Inc., (In re Virginia-Carolina Fin. Corp.)*, 954 F.2d 193, 199 (4th Cir. 1992).

III.

United next argues that the district court erred in finding that it did not establish a § 547(c)(1) defense at trial.[3] We disagree.

A.

We review the district court decision de novo, "effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 745 (4th Cir. 1996). "[W]e review legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error." *Id.*

The party against whom recovery or avoidance is sought bears the burden of proving a § 547(c) defense. *See* 11 U.S.C.A. § 547(g). As we have explained, § 547(c)(1) prevents a bankruptcy trustee from avoiding a transfer "to the

---

would not have obtained full payment from the hypothetical Chapter 7 estate by enforcing its lien rights and thereby attaining secured-creditor status. Because this argument is raised for the first time on appeal, we do not address it. *See Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances.").

[3]United also argues that it established a defense under 11 U.S.C.A. § 547(c)(6). Because this argument is raised for the first time on appeal, we do not consider it. *See Williams*, 294 F.3d at 614.

extent [it] was . . . intended by the debtor and the creditor to or for whose benefit [it] was made to be a contemporaneous exchange for new value given to the debtor; and [it] in fact [was] a substantially contemporaneous exchange." 11 U.S.C.A. § 547(c)(1). The Bankruptcy Code defines "new value" to mean

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property.

11 U.S.C.A. § 547(a)(2) (West 2004). "New value," however, "does not include an obligation substituted for an existing obligation." *Id.*

B.

United argues that it established a § 547(c)(1) defense under the "indirect transfer theory." In this regard, United first contends that had the Debtor not made the transfers, United nonetheless could have obtained full payment by enforcing its bond rights. United maintains that had the Surety paid such a claim under the bond, the Surety would have automatically received an equitable lien by subrogation against the funds the general contractor owed the Debtor. Relying on *O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955 (9th Cir. 1989) ("*Fegert*"), United argues that the money that the Debtor was eventually paid (that the Surety could have obtained directly from the general contractor had United enforced its bond rights) constituted new value to the Debtor for purposes of § 547(c)(1).

In *Fegert*, a general contractor ("the debtor") defaulted on its payments to two subcontractors. *See Fegert*, 887 F.2d at 956. The subcontractors, in turn, sued the debtor and the

surety that had issued a payment and performance bond on the debtor's behalf. *See Fegert*, 887 F.2d at 956. Prior to trial, the debtor and the surety made payments to the subcontractors that, when combined, satisfied the debt and resulted in dismissal of the suit. *See id.* Within 90 days of these payments, the debtor filed a Chapter 11 bankruptcy petition that was later converted to a Chapter 7 proceeding. *See id.* In a subsequent adversary proceeding, the bankruptcy trustee sought to avoid the payments from the debtor as preferential. *See id.* The bankruptcy court granted summary judgment against the trustee, and the Bankruptcy Appellate Panel and the Ninth Circuit affirmed. *See id.* at 956-57. The Ninth Circuit reasoned that if the debtor had not paid the debt in full, the subcontractors would have been paid by the surety, which then would have had an equitable lien against the funds owed the debtor by the owner. *See id.* at 958-59. The court noted that "[t]wo circuits have held that payments by a debtor in exchange for a secured creditor's release of its security interest falls within the exception of section 547(c)(1)." *Id.* at 959 (citing *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 229-30 (5th Cir. 1988), and *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125, 127 (10th Cir. 1986)). The court therefore held that "[t]he security interest constitutes the 'new value' that is 'contemporaneously exchanged'" and noted that "the value of the debtor's estate is not diminished." *Id.*

Without deciding the correctness of the *Fegert* court's conclusion that the release of the surety's security interest in that case constituted "new value" contemporaneously received by the debtor, we conclude that that was not the case on the facts before us. Since United never even attempted to make any claim on the bond here, the Surety never obtained any lien that it could release. It is therefore not surprising that United does not even argue to us that the Debtor received new value by virtue of the removal of the possibility that any such lien would ever be created.

What United does argue is that new value was given to the Debtor in the form of the *money* that it eventually received from the general contractors that might have instead been paid to the Surety had the Surety paid a bond claim. This argument does not work. Even if the money the Debtor paid to United in the transfers was eventually offset by the Debtor's later receipt of funds that the Surety might otherwise have claimed, United has not shown when the Debtor received this "new value." Accordingly, regardless of whether the transfers set in motion a chain of events that resulted in the Debtor's recoupment of the amounts paid, United did not show that such new value was "'given to the debtor' . . . as part of a 'contemporaneous exchange.'" *Baker Hughes Oilfield Operations, Inc. v. Cage* (*In re Ramba, Inc.)*, 416 F.3d 394, 399-400 (5th Cir. 2005) ("[I]t is the precise benefit received . . ., and not the secondary or tertiary effects thereof, that must fit within one of the five categories of 'new value' . . . enumerated in § 547(a)(2)."). In this case, the only benefit that United showed the Debtor was given as part of the contemporaneous exchange for the transfers was the extinguishment of its debt, which does not fit within any of the five new-value categories.

Furthermore, even assuming *arguendo* that the transfers were part of a contemporaneous exchange for new value, United produced no evidence that the Debtor and United *intended* that would be the case. United failed to produce evidence that the parties viewed this transaction as anything more than the payment of the debt of an as-yet unsecured creditor; no evidence demonstrated when the parties believed the Debtor might recoup some of the transferred funds or even that they believed any funds would be recouped.

C.

Similar to its argument that it could have pursued payment from the Surety, United contends that had the transfers not been made, it also could have pursued its right to file a North

Carolina mechanic's lien on the real property improved by one of the construction projects. To the extent that United maintains that the new value given to the Debtor was money—the money it retained by not having to face offset claims that the property owner would have gained from United's enforcement of its lien rights—the argument fails for the same reasons we have discussed regarding its bond argument. United argues, however, that the discharge of United's inchoate lien rights themselves constitutes new value, independent of any financial benefit the Debtor received from the discharge. In particular, United claims that it held a security interest in the owners' properties at the time of the transfers (and thus "had property previously transferred," 11 U.S.C.A. § 547(a)(2)) because the mechanic's lien statutes immediately grant a security interest to a supplier who furnishes labor or material to improve the property. The Code's definition of "transfer" indeed includes "the creation of a lien." 11 U.S.C. § 101(54)(A) (West Supp. 2009). However, just as the Surety did not have an equitable lien to release since it had not paid a claim on the bond, United did not have a security interest to release because it never filed the mechanic's lien claim necessary to obtain such an interest.

Under North Carolina law, a person who improves real property, including by providing rental equipment pursuant to a contract with the owner, "shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property [also known as a mechanic's lien] on the real property to secure payment of all debts owing for" rented equipment. N.C. Gen. Stat. § 44A-8 (2009); *see also* N.C. Gen. Stat. § 44A-12 (2009) (providing the place, time, and contents of the filing required for a mechanic's lien). Such a lien "shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property." N.C. Gen. Stat. § 44A-10 (2009).

A first-, second-, or third-tier subcontractor who has furnished rental equipment in the improvement of real property,

upon compliance with certain requirements, may also enforce the contractor's lien on real property. *See* N.C. Gen. Stat. § 44A-23 (2009). Once a subcontractor has filed a lien, it may enforce the lien within 180 days after the last furnishing of labor or materials to the real property by filing a lawsuit. *See* N.C. Gen. Stat. § 44A-13 (2009). A mechanic's lien is discharged by failure to enforce the claim of lien within the prescribed time. *See* N.C. Gen. Stat. § 44A-16(3) (2009).

As we have explained, United claims that it held a security interest in the owners' properties at the time of the transfers because the mechanic's lien statutes immediately grant a security interest to a supplier who furnishes labor or material to improve the property. United bases this argument on the notion that a mechanic's lien, once filed, is retroactively effective to the time the material or labor were furnished. United's conclusion does not follow from its premise, however. North Carolina's mechanic's lien statutes grant a supplier of labor or material only *the right to file a mechanic's lien*, which United did not do here. *See* N.C. Gen. Stat. § 44A-8 ("Any person who . . . furnishes rental equipment . . . shall, upon complying with the provisions of this Article, have *a right to file a claim of lien* on real property." (emphasis added)). Only upon the filing of a claim for a mechanic's lien is the owner's property encumbered. *See* N.C. Gen. Stat. § 44A-10 ("*A claim of lien* on real property granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property" (emphasis added)). Because United had not filed such a claim when the transfers were made, no interest had been transferred to United and United had no such interest to release.[4]

[4]United argues that *McCoy v. Wood*, 70 N.C. 125 (1874), is to the contrary. However, as United concedes, *McCoy* did not interpret the mechanic's lien statutes at issue here. Indeed, the mechanic's lien statutes considered in *McCoy* did not have comparable wording to those before us now.

United argues that it would not make sense from a policy standpoint to force a subcontractor in United's position to refuse tendered payments and file a mechanic's lien. But it does not necessarily follow from our holding that subcontractors would need to take that course. Indeed, United argues in this very appeal that the Trustee, in order to prove that the transfers were even preferences under § 547(b), should have been required to show that had the transfers not been made, United would not have promptly filed lien claims and thereby attained secured-creditor status such that it could have obtained full payment in a hypothetical Chapter 7 bankruptcy. Whether United's argument is correct is an issue that will have to wait for another case in which the issue is properly preserved. *See supra*, at 7 n.2 (explaining that we do not address this argument because United raised it for the first time on appeal).

Our holding today is limited to the conclusion that United did not establish the § 547(c)(1) defense beyond the amounts determined by the bankruptcy court at the summary judgment stage. This holding makes perfect sense when viewed in the context of § 547(c)(1)'s purpose, to accommodate the need of financially unsteady companies to use checks to pay for new transactions. *See In re Lazarus*, 478 F.3d at 18; *In re Smith's Home Furnishings, Inc.*, 265 F.3d at 965 n.4. The facts of this case, wherein the transfers were not made substantially contemporaneously with United's supplying of the equipment and parts that generated the debt, present a completely different scenario.

## IV.

For the foregoing reasons, we affirm the district court order affirming the bankruptcy court judgment in favor of the Trustee.

*AFFIRMED*